Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division. The Honorable Justice Michael B. Hyman presiding. Case number 24-1-2138 National Surety Corporation v. The Honorable Barbara J. Houser. Good afternoon. My name is Justice Michael Hyman. With me is Justice Carl Walker and Justice Celia Gamras. We're going to conduct this as if we were in the courtroom. Each side will have 20 minutes. The appellants can reserve time for rebuttal. And I'd like each of you to introduce yourself, start with the appellants, and tell me, with the appellants, I assume you're going to split your 20 minutes in some fashion. Let us know how much time each of you is taking for the argument for rebuttal. Good afternoon, Your Honor. I'm Todd Jacobs. I'm here for the Appellant National Surety Corporation. And I'm going to take no more than 15 minutes of the 20. If I don't take the whole 15, then I think Mr. Smethurst for Allianz will take the rest. And we would like to reserve some time for rebuttal. Is that in addition to the 20 minutes? No, it's part of the 20 minutes. Okay. I would say just a few minutes for rebuttal, then. Okay. Are you both going to do rebuttal, then? Well, good afternoon, Your Honor. Ryan Smethurst for Appellant Allianz Global Risks U.S. Insurance Company. Thank you for hearing us today. As Mr. Jacobs has said, I'll have about five minutes. I think we'd agree that maybe two minutes or less reserved for rebuttal since 20 minutes split between us just isn't much time, Your Honor. Okay. Thank you. Ready to go? Mr. Winstead? Yeah. Good afternoon, Your Honor. Hunter Winstead of Gilbert LLP. I'm here on behalf of the trustee for the BSA Settlement Trust, and I'll be handling the from our end. All right. Thank you very much. All right. Mr. Jacobs? Okay. Thank you. Thank you, Judge. Again, Todd Jacobs for National Assurity Corporation. We're the plaintiff who filed this lawsuit in 2017. It's hard to believe it's now almost eight years ago, but here we are. This is an appeal from a stay order entered by the Circuit Court of Cook County. It sounds like someone may have their... There's some noise. I hear some background noise. So, somebody who might be watching may have their audio on. Okay. Now, I think it's gone. All right. Okay. Thank you. Don't worry. Okay. Okay. I'll try and talk fast. So, this is an appeal from a stay order, which of course is essentially an injunction of what is now a seven-year-old case and stayed in favor of a case that was newly filed in federal court in Texas that may or may not ever proceed because that Texas case has been stayed and administratively closed by the federal court in Texas. That's Judge Scholar. Well, when you say administratively closed, it's not closed. It's just sitting there. It's stayed, right? There's a difference. It's a live case. I mean, this happens all the time and it's happened in the Circuit Court of Cook County where it's stayed and it just sits there until some further time. In fact, in this case, the judge even said two weeks after the Third Circuit rules, there should be a status. So, that's this case, but in that case too, it's still a live case. Yeah. It's stayed and the technical term for it is administratively closed, but I think you're right, Your Honor. There's a complicated procedural history, but I just wanted to state up close, up front, what we're asking for to try and make this simple oxen's razor and all that. We think the stay ought to be lifted and that we ought to be allowed to file an amended pleading and that it's really that simple and that at that point, everyone can respond to the amended pleading in any way they want to and this case will be on, even though it's seven years older than the Texas case. Mr. Jacobs, isn't it correct that both cases are state right now, Texas and Illinois? That is correct, Your Honor. So, what's the real issue with that? And I appreciate the fact that the judge, the Cook County Circuit Court judge, did not dismiss the case, which was part of the request, but she felt it was appropriate to stay the case until we hear from the Third Circuit. Yeah, a couple of point answers to that, Your Honor. So, both legal and practical considerations. So, on the legal front, as we discussed in our brief and I'll highlight today, we don't think there's any basis, legal basis for a stay under the clear and convincing standard and kept the Kellerman case with the Kellerman factors. So, I will come to that, but as a practical matter, Your Honor, none of the parties in this case asked that this case be stayed until the Third Circuit rules. No one said that. Why does that make a difference? A judge has a authority on his case to do what is best and can sua sponte stay a case if that's the best way to proceed. I think that's correct, Your Honor, but our position would be that there isn't any legal basis for it and there isn't any reason to wait for the Third Circuit because all that would happen in the interim is that an amended complaint would be filed and we at least get this case started. Then why isn't the federal case in Texas proceeding? Well, so we would be in the same position as the federal case, Your Honor, because what's happened there is that the trust filed its case and all of the insurers then responded with motions to dismiss. We filed motions to dismiss based on forum non-convenience and abstention grounds and those motions are all pending. Right, so the motion to dismiss is pending. Your motion for our amending complaint is pending. If the Texas case is pending but it's been stayed, why should this one proceed? You know, it seems to me wouldn't that be contradictory to the proceeding the other Well, I think, Your Honor, where we would be is in the exact same spot as the Texas case. No, aren't you? Because both of them are at the beginning stages. My read of the court's order, Your Honor, is that she's likely to dismiss the case unless something happens in the Third Circuit or in Texas that would upend matters. That's a good thing, Mr. Jacobs. That's a good thing because the Circuit Court of Cook County did not dismiss your case. That was the request. Had the Circuit Court dismissed your case without allowing you to amend, I'll admit to you I would have been troubled by that. But given that the Circuit Court simply stayed the case, I'm actually not troubled. Well, Your Honor, I think the legal basis for an injunction is lacking here, and I will go over that. I think that we ought to be in the same position as the Texas case. And I think, you know, as a practical matter, I just want to say because I don't understand how you're not in the same position when it's stayed. Even though this one is much older, I agree. But they're both at the pleading stage, right? Am I and then there were motions to dismiss. Okay, here we have a motion for leave to file an amended pleading that no one has responded to. And we have a motion to dismiss. So basically there's no discovery. I mean, they're both at the starting gate, okay? The horses haven't left the gate yet. That may be the case, Your Honor, but I think our fear is that we're going to be stuck in the starting gate based on the reasoning in the court's opinion, because the Circuit Court applied the Kellerman factors to the initial complaint that was filed in 2017, rather than the amended complaint that was filed here. I understand that. So why can't a judge decide the order in which the judge will take motions? It seems that in Illinois, the law is plain that a judge has any authority to control his or her docket. And that's what the judge was doing here. I think that's correct, Your Honor, except in circumstances. And I think this is the current case. This is if the order of deciding the motions prejudice is a party. Right. So the next question is, you need to show prejudice. And I know you argue prejudice. But I want to ask you, if we find no prejudice, case over for you? I don't think so, Your Honor. I think they have to prove the Kellerman factors by clearing convincing evidence. And the initial complaint, by only deciding based on the Kellerman factors based on the initial plea, it prejudices on all of those Kellerman factors. Not really the initial pleading, because between the time you filed the initial pleading, and when she heard the motion, the bankruptcy plan to affect the trustee, everything else, we're not looking at age, you're looking at current history. She was faced with, and that order talks about is current history. That's what she based her decision on is what happened in that. So I'm not sure that it makes that because she took account of what was going on in Texas, what's going on in the Third Circuit, and what the parties were asking for before. She didn't take into account, Your Honor, what was in the amended complaint. The Kellerman factors were all implied. Why should she? She doesn't need to make that decision now. You're saying she had, that it's an abuse of discretion. What you have to show us is that she abused her decision, which is a very high standard to overcome. And one of the ways, maybe prejudice, and I don't see prejudice, but if you can convince me otherwise, how will you prejudice? I know you make argument, but I don't see any prejudice by waiting until after the Third Circuit rules. Where's the prejudice? Let me give you an example, Your Honor, of the prejudice. So the Kellerman factors, the court go through an analysis that the trust complaint in Texas is more comprehensive than the Illinois complaint. But that's only if you compare it to the initial complaint, not to the proposed amended complaint. If you actually compare it to the proposed amended complaint, the Illinois case is at least as broad, and we think broader than the Texas case. And the circuit court said, these motions were filed in tandem, Your Honor, when the Boy Scouts came out of bankruptcy and the trust came into existence. The trust filed its motion to dismiss. We filed our motion for an amended complaint. They were noticed for the same hearing. They were briefed together. They were argued together. The trial court said our motion deserved a ruling. There's actually a court order saying that the trial court was going to rule on all of these motions, and then we got the opinion, and that didn't happen. And we think doing it in that order prejudiced us, and that all of the Kellerman... How is that prejudiced? I mean, where's the prejudice? Because, again, she didn't rule on motion to dismiss at this juncture. She stayed the case. So you are in the same position you were on that day, and again, how does that hurt anybody by allowing them to wait? Let's see what the Third Circuit does. Why this race? What is so important that has to happen now? Why should we lift this day? I mean, what is so important that we can't wait until the Third Circuit? Everybody else is waiting. Well, I think, Your Honor, it's as a matter of practicality. What the order says is that she's staying the case rather than dismiss it because something might happen in the Third Circuit and something might happen in Texas. What it doesn't say is that she's going to consider the amended complaint as part of any practicality moving forward. And I think what we have here is an injunction that is based really on the wrong allegations and the wrong complaint. And there's a couple of things I just like. I mean, I know we've got a shortage of time here, but just to say what we hit in some points that are in the brief, but I think are really important, is that there was an absolute failure of proof to get this injunction under 2619A3, which says if you're going to rely on matters outside of the pleadings, you have to put in a declaration. And there was no declaration put in with this, but the opinion cites all kinds of facts. I mean, rule says shall, Your Honor. It says shall for a reason. I mean, these are pleading motions, and the opinion is just rife with facts that are not, were really just based on lawyer argument rather than any declaration. Like, I want to give you a couple examples. Like, the policies were underwritten in Texas, and the Boy Scouts are in Texas, and there's more claims in Texas. Right. The Boy Scouts are in Texas since 1976. We know that that's where they do business. We know that that's where the policies go and come out of. I mean, there's no question about that. No, it's more complicated than that. 82,000 claimants in Texas, and you're talking about 18 here in Illinois. No, see, this is the problem, Your Honor. None of this is in the record, and that's not even true. There's 82,000 claims nationally, and so this is the kind of lawyer argument we had in the circuit court rather than actually doing it by declaration and actual evidence. Tell me what is incorrect in what I just said. So there are 82,000 claims there all over the United States, 50 states, and what I think what you're going to find since we tried the bankruptcy case, when you actually get to competent evidence, is in the most populous states, you're going to have the most claims. So California, New York, New Jersey, Illinois, Texas are going to have the most claims. And so what you saw in the order- The cases of the federal court in Texas, right? Well, the coverage cases. Coverage, yeah, and that's what we're talking about. The trustee now stands in the position of the claimant to try to get the money. So whether they settled or they haven't, I mean, everything is pointing to the federal court in Texas. I don't agree, Your Honor. The trust isn't in Texas. The trustee is in New Mexico. Most, 20 of the insurers are in Illinois. You briefly say the trustee, I thought, is in Texas. No. The trustee- Is there a district court judge there? The trustee is a New Mexico citizen, and the trust itself is a Delaware corporation. There isn't really any connection to Texas at this point. But the fact that the BSA is in Texas, isn't that a big thing? It was, but none of these facts are actually on the record, but here's actually the truth. The Boy Scouts were in New Jersey until 1978, and there are allegedly thousands of local council policies that were issued in states other than Texas, but none of this is actually in the record in a competent way on a pleading motion. The rules are written the way they are, I think, for a reason, to give people due process. Some of what the trustee said is going to be true, and some of it's not going to be true, but it's actually not in the record in any competent way. In the larger picture, Your Honor, 2619A3 is designed to avoid duplicative litigation and multiplicity of litigation. This is, I think, an extreme example of the rule being misapplied. The history here is that the Boy Scouts, a national surety, which is an Illinois corporation, principal place of business in Chicago, walk down Monroe Street, you'll see the national surety. Chicago company filed this case in Chicago, and so what happened? This is now the fourth motion to dismiss from the Boy Scouts and the trust. You had an effort in the bankruptcy to permanently enjoin this case, and the bankruptcy judge rejected that and said this case could proceed in Illinois. You had the Boy Scouts filing a state court case in Texas. Now you've got a federal case in Texas. National surety has continually taken the consistent position that the case ought to be in Chicago where they are headquartered and where some 20 of the insurers are located, none of whom are in Texas. The Boy Scouts, when the trust came out of bankruptcy, they are the ones who created the duplicative litigation, Your Honor. They could have filed amended pleadings in the Chicago case. This is what happened with the Boy Scouts when Judge Flynn had the case before Judge Conlin, before Judge Flynn retired. He denied a forum non-convenience motion because of the Chicago connections to this case, which have not really changed. So we've got a case that we think... That's old history. You've got more time than 20 minutes. I want to hear from Alliance. Why don't you finish up? Okay, so if you take a look at the Staley case, Your Honor, which is an oldie but a goodie from 1980, even before the old Civil Practice Act, it sort of condemns exactly what's gone on here with the multiple motions to dismiss. And I think you're going to hear from the trustee that this is an effort to streamline things and do it in one location. Just to be direct, Your Honor, I think that's a euphemism that they just... The trustee, who we have great respect for, filed the case in her former court, which I think is forum shopping. And to the standard, Your Honor, I wanted to... If you read all the cases, it's interesting getting ready for these oral arguments. It is... Abuse of discretion is usually the most lenient standard. It's sort of interesting to see how many Illinois appellate court cases there are reversing stays or dismissal orders under 2619-A3 because you've got to look at the underlying standard, which is clear and convincing evidence on all of those Kellerman factors. So I counted, just getting ready for today's oral argument, at least five cases, Zurich, Staley, Hapik-Lloyd, Damaschke, Whitman-Hart, who all reversed stay or dismissal orders under 2619-A3 under an abuse of discretion standard because it's a very high burden to get clear and convincing evidence. And it was not met here. And I think that as a practical matter, if the stay gets lifted and we're allowed to file an amended complaint, this case will be in the same place as Texas. And then we can all see what happens. The Third Circuit argument was in November. Who knows when the Federal Court of Appeals will rule, but it's probably any day now. And this case will be finally in a position to move forward after seven years. Mr. Jacobs, let me ask you, you're asking us to lift the stay. That does not give you the absolute right to file an amended complaint. Judge Conlin didn't rule on your motion, file an amended complaint, correct? So aren't you sort of just making assumptions? Because even if we were inclined to say this case shouldn't have been stayed, it goes back down to Judge Conlin. She has the authority to rule on the motion to dismiss, grant it or deny it, then hear your motion for leave to amend, grant it or deny it. If she denies it, you think you have an appealable order, you come back. But today's decision is not to say you automatically get to file your amended complaint, correct? I think three things could happen, Your Honor. That's a good point. This court could order the amended pleading to be filed under Illinois Supreme Court Rule 362. We've set forward that authority in our brief. That's one option. Isn't that a discretionary question for a trial court to decide? Well, this court has done it several times under Illinois Supreme Court 362. So you could order it or... That happens when a court has denied leave to amend and we say that's error, you can leave. Not for us to just usurp the step where the trial court gets to make that decision first. I think there's actually a couple of cases where there were not motions for leave to amend in the case. This court has ordered that. So that's one option. So the cases I would say that I believe would be motions to dismiss with prejudice without leave to amend, in which case the appellate court might say shouldn't have dismissed with prejudice. If I'm wrong, let me know. But I know of no case that says we as the appellate court get to allow you to skip a step, not get a ruling on your motion and us just decide it. Because I'm looking at Judge Punlin's order and it says because of the state, this court has not reached the motions for leave to amend. So the court never even ruled, which begs the question whether we could even change that. Well, I think you can under Rule 362, but two other options are you could direct the trial court to rule on the amended pleading or you could order the court to allow the amended pleading. I think those are all within your discretion. And honestly, no one has made an argument that the complaint that we're seeking to file is defective in some way. No one has said it's unripe. No one has said they're prejudiced by it. There really hasn't been any argument why an amended pleading can't be filed. So I do think you could order it, but you could certainly direct the trial court to consider it, which I think would be an appropriate thing to do because the Kellerman factors that got weighed here were with the wrong complaint. It was the operative complaint. And indeed, the motion to dismiss was on file before your motion for leave to file the amended complaint. So not only does the court have the discretion to choose what to hear first, but under Illinois law, it's perfectly permissible to hear the sponsored motion before a motion for leave to file an amended complaint. Well, I can tell you the history here, Your Honor, is there were a series of status conferences while the Boy Scouts were still in bankruptcy. And at the last status conference, the judge said August 1, 2023 as the date when the case would start up again because the injunction would expire. So the motion to dismiss that the trust filed and that the motion for leave to amend the complaint that we filed were both filed for that August 1 hearing. They were then briefed together, argued together. The circuit court said our motion deserved a ruling, which I think is correct. It entered an order that our motion would be ruled on and then it didn't. It just didn't. And I think that's where, frankly, where we think, you know, Judge Conlon is a fine judge, but even the best of judges sometimes make mistakes. And I think that's where this went off the rails is that there was really no argument, really a good argument against an amended complaint being filed. So what should have happened is the amended complaint gets filed and then everybody can come in and say whatever they want in response to the amended complaint. And I think that's, you know, that comports with Illinois policy on... Mr. Jacob, can you hear me? So if the trial court had allowed the amended complaint and the amended complaint had been filed and then the trial court subsequently stayed the matter, would we be here? Well, I'd have to see what the ruling was, Your Honor. I would think it was probably... I don't know if this time maybe we would actually get a declaration that complied with 2619A3. Mr. Jacobs, I'm sorry. What ruling would you need to wait for? I said that the trial court granted your motion to amend the complaint. The amended complaint is now filed and then the trial court stayed the proceedings. Would we be here? You know, that's a good question, Your Honor. I think probably not. I think a reason we're here is that the trial court said that the only two contingencies that were keeping her from dismissing the case is what would happen in the Third Circuit and what might happen in Texas. And she did not list among the contingencies our amended complaint. If she had allowed the amended complaint, that might be a different story. I hope that answers your question. And Mr. Jacobs... I'm way over time too, but sorry. Mr. Jacobs, nothing though is going to prevent you, if this case were to get affirmed, the state ultimately gets lifted because it's the Texas federal rules. I'm sure you're going to go to Judge Conlin and say, wait, we still want a ruling on our motion for leave to amend. Even if you dismiss the original complaint, give us leave to amend, correct? So this is not... I mean, this is just a delay of what you're ultimately going to argue. Well, I think the order that the circuit court entered is pretty clear that unless something happens in Texas or the Third Circuit, she's either going to stay this case indefinitely or dismiss it because she applied all the Kellerman factors. And she did not say... But that's not before us. But that's not before... We're not going to be deciding that today. Well, you're on... And eventually the Third Circuit will rule. They will rule. They will rule. And frankly, no one has said in the trust in particular, no one has said that the Third Circuit's impact is going to have an impact on this case going forward. We haven't said it. The trust hasn't said it. No one has said it. So I guess you think in the ether waiting for the Third Circuit, why are we waiting for the Third Circuit? This case has got to go forward and get resolved at some point, whether it's Illinois or Texas. Let's hear from Alliance. Thank you, Your Honor. Ryan Smethurst, McDermott, Will and Emery for co-appellant Alliance. We join National Security's briefing and the argument today. But the Alliance issue is different as I hope the panel here appreciates. And that's because Alliance has a counterclaim dating back to 2019 in this case. And then again, amended in 2020 before the bankruptcy, which relates to allocation among insurers. And in particular, a settlement payment Alliance made on an Illinois scouting abuse claim before the bankruptcy. There is no competing action with respect to this counterclaim because the Texas pleading is devoid of the same parties, Hartford and Century related companies involved in the counterclaim here in Illinois. But because of the settlements, it's all taken care of in the Texas. The trustee has certain responsibilities. And so Texas can take care of that as I understand the plan. Well, that is the trust's argument. And there's certainly some alignment of interest with the trust in Century and Hartford given the settlements. We recognize all that. There's nothing in the Texas pleading addressing what has been pled in the case below with respect to the pre-bankruptcy settlement. Not only are Hartford and Century not parties in Texas, there's no pleading by the trust that addresses... Because of the bankruptcy. The fact is with regard to your counterclaim, why does it make any sense to allow the counterclaim to go forward and not the National Security's claim? I mean, it seems to me that either it's all one or all none. I mean, either we lift the stay for both or we don't for both. I mean, is there any reason why we should be treated differently? Yes. Well, first of all, we think that... What is the argument? The best argument you make that you'd be treated differently? Well, we think that the stay was error as to National Security and Alliance, but the reason we should be... But why should we treat you any differently if we... Because there's... With respect, I didn't mean to interrupt you, Judge. The same cause, same parties test is simply not satisfied. Neither prong of it is satisfied with respect to this counterclaim. We've talked about Hartford and Century. They're not parties there. There's nothing in the pleading that addresses whether the trust standing in Hartford and Century's shoes is going to honor or pay or satisfy the subrogation claim arising from the 2019 and 2020 settlement payments. So that's just completely absent. But turning to the same cause test, it's also true that the Texas pleading is entirely devoid of the issue. The trustee could have pled issues like Alliance pled in its counterclaim. It could have pled issues about layering of insurance, trigger of coverage, number of occurrences that affect which insurer pays on a settlement. And it's the same issues bound up in the Alliance counterclaim arising from its 2020 Illinois settlement payment. None of that's in the Texas case. And although the authority on this point is admittedly scant, we have cited to your honors the Allstate decision out of federal court in Michigan. It clearly doesn't bind your honors. But the point in that case is that a claim for coverage like what you have by the trustee intercomplaint in Texas is not the same claim. It's not the same operative facts. It's not the same transaction or occurrence. Phrase it as you will, but it's not the same claim that is the Alliance counterclaim for subrogation contribution here. That's the error. That's the prejudice. The test for dismissal. And yes, Judge Conlin stayed the case. She didn't dismiss it. But the test isn't satisfied for either because the same parties and the same cause is not present in Texas. And so Alliance has been prejudiced by the stay because this case is now on hold. And because it's on hold, we face a greater likelihood that the Texas case will go forward in a court where the plaintiff in this case served as a chief judge. We find that inherently with respect to her that that to me that argument is one of the poorer arguments. That's not before us. We're not going to make that decision. That's not nothing to do with this case. That's not prejudice. I mean, if that was, you know, that's not that's for some other court. She's the party here. That's not prejudice. So, I mean, again, I'll ask you the same question. I asked Mr. Jacobs, where's the prejudice? The prejudice is that we have a pre-bankruptcy claim for subrogation and contribution arising from a payment that my client made. It's a new world now because of the bankruptcy, the bankruptcy plan. We can't go back to the old world, which you were talking about 2017 and 2019. We are in 2024 now. And after what's happened the last few years, you know, and we all just heard that according to Mr. Jacobs, you know, it could be any day now. That's what he said. So, so what's the, again, where's the fire? Why shouldn't we just leave this for nature to take this course and see what happens and have a, see what the judge does. We really don't know what the Judge Conlon might do. We don't know what's going to happen in Texas. We're not here to speculate. The fire, or as I would put it, the error and the prejudice was dismissal of the counter, excuse me, was staying the counterclaim without any pending competing action because that There is a competing action and it's in Texas federal court. But your honor, with respect that that pleading has nothing to do with the counterclaim pled here. That's what I hear from what I read. I mean, I understand your argument. I understand your argument. Thank you. The pleading in Texas relates to insurance coverage for the claims that materialized in the bankruptcy. That is fundamentally different than whether a 2020 settlement should be spread among insured, paid by my clients should be spread among insurers. There's no reference to those facts or that type of claim in the trustees Texas complaint. She could have pled this or the trust could have pled this. I don't mean to make it personal. The trust could have pled this in Texas. The trust did not. And so we have error and prejudice because the test in the in the motion to dismiss below and Cook County that the 261983 test simply is not satisfied. Neither prong of it is satisfied as respects the Alliance counterclaim. That's the error. That's the prejudice. This court ought to lift this auto reverse auto lift the stay and send this back. So that yes, Judge Conlon can take up the pleading amendment motions, which she should you know, liberally granted in any of it. So that's that's the crux of our position. Appreciate it. Any questions? If not, we're from a belly. And you have extra time if you need it. Yes, we'd like to reserve as much as you'll give us. Thank you. Well, not for you necessarily. You have about two minutes left. We gave you each more time. I'm saying that Mr. Weinstein has a little more time because we gave each of you more time. Thank you, your honor. Much appreciated, your honor. May it please the court. Hunter Winstead of Gilbert LLP. I am counsel to the BSA Settlement Trust. With me here today is the Honorable Judge Barbara Houser, who is the trustee for the trust. I don't want to belabor anything that the court's clearly honed in on and repeat the  I think the court understands well what the position of the trust is. This was an abuse of discretion standard with respect to the actions taken by Judge Conlin in the circuit court. But there was no abuse. Her decision to stay. This action was based upon considerations of judicial efficiency, a comparison of the action in Texas to what was was was pending and could be pending in Illinois. Um, the prospect. What is your response to the with regard to the Kellerman factors? There's not what Mr. Jacobson. There's nothing in the record in any consequential way. That would provide a fax that she could have relied on. Yeah, so the facts on the four element factors are based upon undisputed things that are in the record. He was disputing. I heard Mr. Jacobs disputing some of the things that I I had seen in the briefs. Well, and looking at what the what you look at Judge Conlin's order, she references she had reviewed and part of the record below was the complaint and all of the motions to dismiss that were pending and filed in Texas. She reviewed the complaint and determined that the substance of the complaint in Texas encompasses all of the claims for insurance coverage and disputes regarding insurance coverage that are in the more narrowly framed Illinois action. So with respect to the counterclaim, we just heard that that's nowhere to be seen in Texas. Well, it's premature and a couple of things on the counterclaim. So that's Allianz's claim to seek subrogation or contribution. That's not a claim for the trustee to plead on behalf of Allianz. And as Judge Conlin noted in the hearing and her order suggests, the time to do that is not yet. We're at the motion to dismiss stage. Assuming the Texas litigation proceeds past that stage, the insurers will have an opportunity to assert counterclaims, cross claims, claims for contribution, subrogation, and those will be litigated out. But Judge Conlin in her hearing and order found there's nothing that would preclude that from and she has no reason to speculate that there would be any prejudice to Allianz in that  The court has correctly noted that settled insurers like Hartford and Century are not parties in Texas because they've settled and because under the terms of the bankruptcy plan, they can't be pursued. They're protected parties. What the bankruptcy plan does do, however, is say that any subrogation or contribution claim that a carrier like Allianz has against one of those carriers is preserved and can be asserted against the trust. So there's no prejudice to Allianz with respect to their ability to make a contribution for that claim, saying that it overpaid or should receive someone's consideration for that. And bankruptcy plan, there's no prejudice. That's the only thing that I've heard, you know, from Allianz's counsel is these inter-insurer claims are not part of the Texas action. That's because they haven't been pledged yet and presumably his client will. And the plan preserves the ability for them to assert claims for contribution and subrogation, but not as against Hartford or Century. That addresses your question, your honor. To go back to where we were before I interrupted you. Oh, that's okay. I lied. I just was like, with regard to Kellerman vectors, when you were answering it, what you were saying, and tell me if I'm right, the judge was taking judicial notice of certain things going on. Yes, sir, your honor. Certainly part of the record below was the pleadings from Texas and the complaint. And she looked at that and determined, okay, for the Kellerman prong about the availability of comprehensive relief, everything that could be litigated, all of the policies, all of the insurer parties, and then some in Illinois can be litigated in Texas. The Texas action is the comprehensive action that the trust filed. When the trust came into existence, it inherited a landscape of piecemeal litigation between BSA and certain of its insurers. This case in Illinois is one of those cases. There was another case in Texas pending that did not involve all of the policies or all of the issues or all of the insurers. So on the first day she could, the trust sought to dismiss those claims, including filing her motion to dismiss in this case and filed her comprehensive coverage action that would address over 3,000 insurance policies, all of the liabilities and the insurance coverage questions that arise from them related to BSA and all of the insurers. Mr. Winstead, they're arguing, though, that the case in Illinois is just as comprehensive as the case in Texas. And do you want to respond to that? Absolutely, your honor. Based on the operative complaint, as the court has observed, it's not. The operative complaint that was filed that Mr. Jacobs asserts was the first filed action in this case over six years ago was limited to these 18 hacker claims involving a single abuser. That was the state of play in terms of the framing of this Illinois litigation prior to the bankruptcy. Prior to the bankruptcy, this case was pending for years as an action brought by national that just focused on these 18 claims and the subset of the policies, even though there were other claims out there and there are other policies in play. It was never framed as a comprehensive action. The bankruptcy for BSA is filed in 2000 and is stayed by the automatic stay. So when the trust is established and BSA emerges from bankruptcy, what the trust, what's out there is this narrowly framed, non-comprehensive litigation. There is limitations on the resources that the trust can or should have to expend to litigate questions of coverage. The constant belief is that to maximize efficiency, judicial resources, and trust resources, all insurance disputes should be litigated in one forum. And that's the forum in Texas for the reasons cited in our papers. Why Texas? So several reasons. There's a nexus with Texas with respect to the underlying claims that exceeds that in  Texas is the jurisdiction that has the second greatest number of abuse claims and more than Illinois. Secondly, BSA was headquartered in Texas and many, not all, but many of the policies issued to BSA were issued to BSA at addresses in Texas in the northern district. This includes insurance policies issued by Allianz and National Assurity, who you're hearing from today. These are contract issues that will be litigated and they'll be litigated based on contracts that were placed, at least in large part, in Texas. Telling us that there were more contracts issued in Texas than California? Is that what you're telling us right now? Well, there's two, I should be clear, there's two batches of insurance. There's the policies that were issued to the BSA National Organization, which that's the entity that had its headquarters in Texas. Most of those policies were issued to BSA in Texas. Then there's a separate category of insurance policies that were also contributed to the trust. These were policies issued to local councils throughout the United States. The BSA National Organization was the debtor in the bankruptcy case. The local councils, who are discrete, separate, independent, non-profit organizations that sort of conduct the boots on the ground scouting operations and individualized geographic locations. Those local councils were not debtors in the bankruptcy case, but they got a release and they contributed their insurance. Policies for local councils were issued in various jurisdictions throughout the country. Since you didn't answer the question, I'm assuming that you're telling me that there were not more policies issued in Texas than in California. Is that a correct statement? Not to my knowledge. I'd have to look at what all of there's, I should be clear, there's 300 and some BSA policies, mostly issued in Texas. Then there's national, excuse me, there's local council policies issued throughout the country. I would admit to, I've not counted up how many policies there are in each jurisdiction for the local councils. Part of Mr. Jacob's argument though, is that if he had been allowed to file his amended complaint, then we would know that the Illinois is just as comprehensive as the one in Texas. Well, what happened is that the trustee filed her complaint on the first day she could, and nine days later, Mr. Jacobs and national surety filed leave to file an amended complaint with a copy of an amended complaint attached to it, a proposed amended complaint that named the exact same 91 insurers and policies who the trustee who had identified in her action filed nine days earlier. And that was what they were seeking leave to amend to do, to convert the narrow Illinois litigation into a proxy for, or something that mirrored the comprehensive action filed by the trustee. Let me ask you, what's really the problem with asking, with filing that? I mean, I don't see the problem. What's the problem with that? Let me ask you to clarify. What's your difficulty? What's your, I'm asking questions, what's your difficulty with that? Well, the problem with that is as follows, your honor, for the reasons mentioned in our motion, the nexus with this case, including witnesses and documents for BSA, which will be relevant to proving it up is in Texas, not in Illinois. Second, the potential for both of these cases to proceed in parallel would be sort of a multiplicity of litigation that would be inefficient for the trust and costly. Again, you know, the trust has an interest in conserving resources to pay claimants and potentially having to litigate in both Texas and or this court or in Illinois would be inefficient, potentially create inconsistent results and outcomes on discrete issues. Ms. Twinsted, I think it was Mr. Jacobs who said that there was really no good argument as to why they shouldn't be given leave to amend. What was the basis for your objection, if any? Well, the basis for the objection was we had first filed a motion to dismiss the case in its entirety and then the insurers came in and decided they wanted to amend this more narrow Illinois litigation to replicate the scope of disputes policies and insurers at issue in the already filed Texas case, which was the trustees chosen forum. The objection is, is this is an effort to deprive the trustee in her filing made in the earliest possible date after the effectiveness of the plan and the establishment of the trust to choose to litigate her comprehensive coverage action in Texas, which happens to be the place that has the greatest connection to the most insurance policies and the second most claimants. And so, you know, that is why the trust filed her dismissal and her comprehensive action and the efforts by the insurers to have her essentially have to litigate here in Illinois a dispute she's already teed up in Texas under a leave standard. That was the basis for the opposition. Any other questions? I have one question. Mr. Jacobs said that there really isn't any reason to wait for the Third Circuit to rule. Is that true? I'm sorry, your honor. I couldn't hear what you said. There, Mr. Jacobs said there isn't any real reason to wait for the Third Circuit to rule. Is that accurate? Well, certainly the court in Texas and Judge Conway don't believe that. So what's what's at stake at the Third Circuit? You know, this is described in the papers, but the Purdue Pharma litigation involved before the United States Supreme Court, the question of releases to non-debtors that are non-consensual can be part of a bankruptcy plan. What the insurers flagged in Texas and their stay motion in that case was the notion that there are releases for the local councils in the Boy Scouts plan that were given in exchange for the contribution those local councils made, including the insurance rights under their policies that have gone to the trust. One of the things that the Third Circuit is evaluating is propriety of those releases under Purdue. The trust exists. It is up and running. It is prepared to move forward with this litigation. But I think that Judge Conway and then our judge in Texas believe that it's more prudent and more efficient from a resources perspective not to proceed with litigation until there's certainty that there won't be something that happens in the Third Circuit that upsets the plan. And so that's the basis upon which both Judge Conway and the Texas judge have essentially reached the same results in staying the cases and saying once we have a ruling there to come back. So that's, I think that that's a sensible approach and a good use of the court's discretion in that regard. Is there any more questions you could wrap up? I thank the court for their time and again glad to address any other questions but appreciate it. Mr. Jay, I'll give you two minutes and give Alliance a minute. So go ahead, Jay. Thank you so much, Your Honor. I appreciate the time. So to the point I made earlier, Mr. Winston sort of confirmed it. All of the lawyer argument about where the policies were issued, how many claims there are, this is all Texas. None of this is in the record in any competent way and I heard judicial notice but if you can scour the Texas pleadings and the bankruptcy plan of reorganization and you are not going to find any of those facts and some of them are going to be disputed and that's why 2619A3 is written the way it is. Scal, it's a pleading motion and it was the trustee's burden to meet the clear and convincing standard and they didn't put in anything. If you just look at what's in the pleadings, it just doesn't get you there. In addition to what Mr. Smethurst said about the insurer claims not being in the Texas case, the other thing that sort of hasn't been mentioned here, what's not in the Texas case is the actual claimants which is a matter of Illinois public policy. This is the Zurich case, Justice Freeman, the claimants should be parties. They are parties here in Illinois, they are not in Texas. I think it's an important point. We heard a little bit about the new world order, that Texas is the new world and I guess Illinois is the old world. All we're really asking for is leave to come into the new world ourselves, your honor. When the Boy Scouts came out of bankruptcy, they filed their complaint in Texas. They actually filed it a day early, I think in violation of the injunction. They were in such a big hurry to do it. We filed a motion for leave to file an amended complaint within nine days. If you look at our complaint, it doesn't bear any resemblance to what the sort of bare bones complaint the trust filed in Texas. Ours is far detailed, far more comprehensive. As to the Third Circuit, I think we're all nimble enough. If you lifted the stay and allowed us to file an amended pleading, I don't think anything the Third Circuit is going to do is going to impact this case. If it did, we are all nimble enough to deal with it. Judge Conlin is nimble enough to deal with it. The world is full of contingencies for things that may or may not happen in the future. This case really ought to go forward. There are serious questions about the amount of coverage, whether there is coverage. There's 82,000 claims. This has been going on for eight years. I ask myself, what are we doing? Let's move this forward, at least incrementally. I don't think there was any basis for a stay. There was a lack of an evidentiary hearing. I don't think anyone is going to be prejudiced by getting this case at least started. Thank you. I appreciate all your time. Thank you. Mr. Smithers? This is the only case that involves the Allianz counterclaim. There's no competing action. There's no same cause pled in Texas. For those reasons, and with respect to the three of you on the panel today, a decision by you affirming the stay would create bad precedent on the same cause part of 2619A3. This is an important case. This is an important dispute. This one was filed many years ago, and the Allianz counterclaim was last amended in 2020. So even without discussion of whether Judge Conlin should have reached the motions to amend, this case, as respects to the Allianz counterclaim, is broader and involves a different cause than the Texas case. That's why Allianz urges you to reverse the stay. It should not be Illinois law that the Illinois state courts are going to stand down when a later filed case in another jurisdiction does not involve the same cause. That's antithetical to the Illinois first file jurisprudence. It is a rule that's ripe for abuse, as we've seen here. It's a rule that would encourage forum shopping in the middle of a pending Illinois state case. So the error, the abuse of discretion, and the prejudice arises, as respects Allianz, because there is no competing action on the Allianz counterclaim. It's only the case below that includes that cause. Thank you. Would something prevent you from filing a motion in Texas to intervene and to file some sort of counterclaim? Well, we're a defendant in the Texas action, Judge. So couldn't you file some third-party action, counterclaim, cross-claim, something in there to preserve your right? We can and will if that case survives motions to dismiss, but I believe it's wrong to speculate on what's going to happen in the competing action because this court ought to look at the same cause test as it existed at the time Judge Conlin ruled on the trust motions to dismiss. And if you do that, there's no competing action for the same cause. It is true, as Mr. Conlin said, that the time for pleading, the time for answering, and the time for asserting cross and counterclaims in Texas hasn't happened, but we don't know that it ever will. There are numerous motions to dismiss that case. We don't know what the judge in Texas will do with those motions. So it's just speculation. And I believe it's improper to base either a dismissal or a stay on speculation when you don't have, at the time of the circuit court's ruling in this case, you don't have the same cause pending anywhere else. So if that case gets dismissed, where does that leave you? I would think in a better position. If that case is dismissed, we hope that this one, it's because this one is going forward. And so the counterclaim that was pled back in 2020 will be alive and well here. And presumably if the Texas case is dismissed, Judge Conlin will grant the pleading motions that Mr. Jacobs and I have and the counterclaim that my client has asserted will be broadened to encompass the same legal issues of inter-insurer allocation, trigger, number of occurrences, layering of insurance. Those will all be pleaded. Sure. But when you say, but we don't know if that case is even going to go forward, you say it in a way that makes one think you're going to be prejudiced. You want that case dismissed. And so if that happens, you're in a better position to come back to it. We have moved to dismiss it on forum non-convenes, a difference to the Cook County action. So yes, we do want it dismissed because this case was first filed and my client's counterclaim was not only first filed, it's the only filed cause on that issue. So that's what we think, again, the error in the abuse of discretion was. So Judge Conlin actually granted you some grace by not dismissing the case in Illinois, by simply staying the case to wait and see what's going to happen. In both, and in the third circuit, in the court of appeals. With respect, I think grace is the wrong metaphor, Judge. I think it would have been worse had she dismissed the case based upon a competing action that doesn't involve the same cause. That would have arguably been a more severe form of abuse of discretion. But so to this day, I mean, this is a forum fight that, as Mr. Jacobs has noted in his papers, has been pending for over, what, six, seven years. This case ought to proceed. So the stay is prejudicial as to my client because it seeks to hold forum. We're also an Illinois company. We seek to hold forum in our home state where we filed first. It's basic. This stay is prejudicial. But no one has ruled on that yet, Mr. Smith-Thurst. No one has ruled that your client won't get to litigate here in its home state. Well, true. The case has not been dismissed. I have no retort to that, but the case shouldn't have been stayed because the Texas case is not in parallel. The Texas case is stayed right now. True, but this case, as respects my client, is broader than the Texas case as we look at the pleadings right now. Okay. As I said earlier to Mr. Jacobs, had Judge Conlin dismissed this case without allowing you to amend, I would be troubled. As it stands now with the stay, I'm frankly not troubled by the stay. The case is stayed in Texas. They argue that throughout their briefs also. Your Honor, I take your point, but my point is a little different, which again is the stay was wrong because there's no competing action as respects my client. So there's no basis for either a dismissal or a stay. I hear you. A dismissal would have been even more prejudicial, but that doesn't eliminate the prejudice that came with the stay. All right. Thank you very much. There's very little that the parties agree to, but I think one thing we can all agree is it's an important case, and we take it as so, and we will take it under consideration. I want to say our appreciation for your briefs, which were well done, and your professionalism and arguments in answering our questions this afternoon. So we're adjourned, and we'll be taken under adjourned advisement in rule forthwith. Thank you. Thank you so much, Judge. Appreciate it. Thank you. Thank you to the court.